[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 5741-ic
This action for money damages, brought by the plaintiffs, Alfred C. Briggs, Jr., Nancy Debolt, and Elizabeth Briggs, Trustee, against the defendant, George P. Briggs, hinges, in large part, on the court's interpretation of the term "net revenues." The term appears in an eighteen page stipulation filed by the parties in SPNH 8401-01529, RogerBriggs, Executor v. George Briggs et al, and is nowhere defined in the document:
 In addition to the rental payable under said lease for the remainder of the term thereof, as shortened hereunder, George P. Briggs shall pay to the landlord, on a quarterly basis, 25% of any and all net revenues generated in his favor by, and/or, at the building to be constructed at 401 Greenwich Avenue, irrespective of whether said income is the result of sub-leasing the same, or any portion thereof, or business operations conducted by George P. Briggs himself, his agents, servants or employees, or any corporation or business entity in which he has any interest whatsoever, at the subject premises.
The parties and their witnesses offered a number of definitions of the term, but no one was able to testify definitively about the intentions of the parties when the stipulation was originally prepared.
The first named plaintiff, Alfred C. Briggs, Jr., testified that, to him, "net revenue" equals gross revenue less commissions paid to real estate brokers only (trial transcript, July 21, 2000, p. 47).
Plaintiffs' witness, Clifford Mallo, a licensed CPA, defined "net revenue" similarly, but would allow a further deduction for rebated or discounted rent: "gross revenue less any return to the customer or allowances or in a case of rent it would be the gross rent received less any partial months refunded, or in cases of having agents rent the place it's the net amount of revenue you receive from the real estate broker" (trial transcript, July 21, 2000, pp. 71-72).
An additional witness for the plaintiffs, Attorney John Meerbergen, who represented the Estate of Alfred Briggs, Sr. in a summary process action concerning the subject property, testified that income less business expenses would be allowable if the defendant were operating an ice cream CT Page 5741-id store on the property (trial transcript, September 21, 2000, p. 15); otherwise, "mortgage payments would be paid, plus taxes, and then there would be a 25/75 . . . per cent split" (trial transcript, September 21, 2000, p. 16).
Defendant's witness, James Bassett, a licensed CPA, believed that the term "net revenues" refers to "gross revenue, sometimes referred to as receipts, minus all operating expenses that are attributable to a property. This would include mortgage interest, taxes, insurance, utilities. The IRS allows us to deduct something called depreciation also, and that usually results in a net profit or loss which is distributed to partners or shareholders" (trial transcript, September 21, 2000, p. 57).
Black's Law Dictionary, 6th edition (1990), admitted into evidence as defendant's exhibit 2, offers the following: "Net revenues. See Net income; Net profits" (p. 1041). Ballentine's Law Dictionary, 3rd edition (1969), which was not offered as an exhibit by either party, is nonetheless consistent with Black's: "net revenues. For most purposes, the same as net income" (p. 846).
Two dictionaries of accounting terms were admitted as joint exhibits, B and C: Dictionary of Accounting Terms, 2nd edition, and Dictionary ofAccounting, 2nd edition. Neither dictionary defines "net revenue," but both define "net income" as, generally, revenue less all expenses.
A review of the stipulation itself offers assistance in determining what the parties intended by the term. Although "net revenue" is not defined, it is significant that the stipulation uses the terms "net revenues and "income" interchangeably: "25% of any and all net revenues
generated in his favor . . . irrespective of whether said income is the result of sub-leasing the same . . ." (emphasis added).
The court, therefore, determines that, for purposes of this case, the terms "net revenues" and "net income" are synonymous. An examination of plaintiffs' exhibit P, George Briggs' Schedule E attachments to his federal tax returns for the years 1988-1999, provides the court with the necessary financial information: the annual rental income figure less the itemized rental expenses. Depreciation expense is disallowed because, while permissible for IRS purposes, it does not reflect actual out-of pocket payments made by the defendant. CT Page 5741-ie
Annual Rental Income Annual Rental Expense1988 $64,523.00 $81,114.001989 108,632.00 104,142.001990 93,845.00 142,116.001991 52,994.00 112,310.001992 80,113.00 98,205.001993 116,765.00 126,573.001994 123,133.00 96,234.001995 127,212.00 85,587.001996 124,198.00 97,275.001997 137,036.00 95,108.001998 136,996.00 90,873.001999 155,983.00 99,696.00TOTALS $1,321,430.00 $1,229,233.00
Total — Income less expenses: $92,197.00 x .1875 (representing plaintiffs' share) $17,286.94.
Judgment may enter for the plaintiffs for $17,286.94 plus a reasonable attorney's fee of $6,000.00 plus taxable costs. Payment in full is ordered to plaintiffs through their attorney on or before May 9, 2001.
Leavitt, J.
CT Page 5742